**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

RICKY DAVIS                                                                                              PLAINTIFF

v.                                            No. 4:12CV00307 JLH

CAROLYN COLVIN, Acting Commissioner,
Social Security Administration                                                          DEFENDANT

**OPINION AND ORDER**

On August 26, 2009, Ricky Davis applied for supplemental security income. Tr. at 80. Davis's application was denied initially and on reconsideration. Tr. at 45, 49. Davis sought a hearing before an ALJ. Davis and a friend testified at the hearing. On October 29, 2010, the ALJ issued a decision concluding that Davis was not disabled under the Social Security Act. Tr. at 12. Davis asked the Appeals Council to review the ALJ's decision. Tr. at 8. The Appeals Council found no reason to change the ALJ's decision and denied Davis's request. Tr. at 1. The ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *See* 42 U.S.C. § 405(g). Davis commenced this action on May 22, 2012, seeking judicial review of the Commissioner's decision.

When reviewing a decision denying an application for disability benefits, the Court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner made a legal error. *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there

is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Slusser*, 557 F.3d at 925. In determining whether substantial evidence supports the Commissioner's decision, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports the decision, but the Court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The regulations provide a five-step process for evaluating disability claims. *See* 20 C.F.R. § 416.920.

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

*McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (citations omitted). "The claimant bears the burden of proving disability. Having shown, however, that he is unable to perform his past relevant

work, the burden shifts to the [Commissioner] to show that work exists in the national economy that the claimant is capable of performing." *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

Davis was forty-two years old at the time of his hearing. Davis functions in the range of mild mental retardation. He has no significant work or medical history. His last reported earnings flowed from working as a laborer doing roofing and landscaping in 1998. Tr. at 84, 92. Since that time, he has freelanced, doing yard work and roofing jobs. Tr. at 33, 101, 169.

Davis lives with and takes care of his blind brother, administering his brother's medications and preparing his meals. Tr. at 34, 116, 140. The two subsist on the brother's disability check, food stamps, and Davis's sporadic earnings from yard work and blood donations. Tr. at 33, 81, 120, 144, 183.

Davis initially based disability on bipolar disorder. Tr. at 91. He later complained about his left ankle, Tr. at 132, 138, 145, and depression, Tr. at 139, 141. The ALJ ordered a mental diagnostic examination. The examiner diagnosed no mental illness but opined that Davis may have mild mental retardation. Tr. at 169-71. The ALJ then ordered intellectual testing.

A second examiner determined that Davis functioned in the range of mild mental retardation and questioned whether Davis could successfully hold down an unskilled job. Tr. at 181-83. The second examiner observed no general or mental health symptoms that would have affected intellectual testing. Tr. at 183. Neither examiner reported the presence of symptoms of depression or bipolar disorder.

At step one of the disability-determination process, the ALJ determined that Davis had done no substantial gainful activity since August 26, 2009 — the protective filing date. Tr. at 14. At step two, the ALJ determined that Davis's ability to work was impaired by mental retardation. Tr. at 14.

At step three, the ALJ found that Davis's mental impairment was severe but that the impairment did not meet or equal listing 12.05 — the listing for mental retardation. Tr. at 14. The ALJ found that Davis did not meet listing 12.05C because Davis had no physical or other mental impairment. Tr. at 15. At step four, the ALJ determined that Davis could do work involving simple job instructions at all exertional levels. Tr. at 16. After questioning a vocational expert about available work, the ALJ determined that work existed that Davis could do and denied the application. Tr. at 20.

Davis contends that the ALJ erred regarding:

(1) the ALJ's determination that he did not meet listing 12.05C,

(2) the ALJ's evaluation of his credibility,

(3) the ALJ's evaluation of the medical evidence, and

(4) the ALJ's hypothetical question.

Based on these contentions, Davis argues that substantial evidence does not support the Commissioner's conclusion that he is not disabled. Davis also argues that the Commissioner's decision does not comport with required legal standards.

Davis asserts that he meets listing 12.05C because he has an ankle impairment and suffers from depression. Document #9, at 10-12. In the third step of the disability-determination process, the ALJ compares the claimant's severe impairment with those on a list of specific impairments. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairment meets or equals a listed impairment, the ALJ will deem the claimant disabled without considering his age, education, or work experience. Meeting listing 12.05C requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. No dispute exists about the first

4

requirement because Davis had a "valid verbal, performance, or full scale IQ of 60 through 70." Tr. at 182 (verbal: 67, performance: 69, full scale: 65). The latter requirement is disputed. Davis argues that the ALJ failed to consider properly the effects of painful ankle hardware on his ability to work and that the ALJ failed to consider properly his depression, stress, and bipolar disorder.

An October 2009 x-ray of Davis's ankle confirmed the presence of hardware for the repair of a remote fracture but found no new fractures and no new abnormality. Tr. at 175. The x-ray confirmed proper alignment of the remote fracture. Moreover, Davis reported no impairment from his left ankle. The only complaints regarding his ankle were sporadic occasions of pain. Tr. at 132 ("My ankle hurts on and off."); *id*. at 138 (explaining that his ankle hurts about three times weekly, after he walks for a long time). When asked by the ALJ about his physical impairments, Davis mentioned only back pain. Tr. at 32. Thus, substantial evidence supports the ALJ's conclusion that Davis has no physical impairment that imposes an additional and significant work-related limitation of function.

Nor has Davis shown any "other mental impairment imposing an additional and significant work-related limitation of function." Neither psychological examiner observed symptoms of a mental illness or mental disorder other than mild mental retardation. Davis reported situational depression flowing his inability to find work, Tr. at 139, 141, but that report does not suggest a mental illness or mental disorder imposing an additional and significant work-related limitation of function.

Davis contends that the ALJ failed to develop the record fully and fairly regarding bipolar disorder and depression, Document #9, at 11, but no reason existed for further record development because neither psychological examiner observed symptoms of bipolar disorder or depression. *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("If sufficient evidence alerts the ALJ to the possibility

of a severe mental impairment, the ALJ must further develop the record about mental impairments before ruling on the severity of the claimant's impairment(s)."); *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."). Davis reported no mental problems other than those symptomatic of mental retardation. The ALJ did not err in determining that Davis did not meet the requirements of 12.05C.

Davis complains about the ALJ's evaluation of his credibility and argues that he is unable to work on a sustained basis. Document #9, at 6-10. An ALJ has a statutory duty to assess the claimant's credibility. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). To evaluate Davis's credibility, the ALJ followed the required two-step process and considered the required factors. *See* SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements* (July 2, 1996). Thus, the question before the Court is whether substantial evidence supported the ALJ's credibility evaluation.

Davis contends that a painful ankle prevents him from working, but no medical evidence supported that degree of severity. The ankle injury occurred long ago and does not prevent Davis from working or caring for his brother. As mentioned above, when he was asked about physical impairments that prevented him from working, Davis mentioned only occasional back pain. Tr. at 32. Following an October 2009 motor vehicle accident, the examining physician observed no impairment, except for neck strain and a contusion to the left foot. Tr. at 178-79. Those injuries may have impaired Davis temporarily but not long enough to meet the duration requirement. 42 U.S.C. § 1382c(a)(3)(C)(i). The inconsistency between the allegation of physical impairment and the medical evidence weighed against the credibility of the allegation of physical impairment.

6

Davis also contends that depression prevents him from working, but no medical evidence supported the presence of depression. Neither psychological examiner observed signs of depression. Davis did not complain about depression to medical professionals. The inconsistency between the allegation of depression and the medical evidence weighed against the credibility of the allegation of disabling depression. The ALJ had a sufficient basis for discounting the credibility of the allegation.

Davis argues that the ALJ failed to evaluate medical source opinions properly. In particular, he contends that the ALJ disregarded the second examiner's opinion about his ability to work. Document #9, at 4-6. The second examiner questioned Davis's ability to hold down an unskilled job considering his ability to comprehend and overall intellectual functioning. Tr. at 183.

If conflicts exist in the medical evidence, the ALJ must resolve "the differences between . . . consultative evaluations in the light of the objective evidence." *Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010). The ALJ may "reject the conclusions of any medical expert, whether hired by the claimant or the government, if they [were] inconsistent with the record as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

In this case, the medical evidence flowed from examining psychologists because Davis has never undergone mental health treatment. Davis suggests that conflicts exist in the psychologists' opinions, but that suggestion is mistaken. The first examiner made no diagnosis but opined that Davis might "have mild mental retardation," reported "some difficulty communicating in an intelligible and effective manner," and opined that Davis might "have difficulty completing work like tasks within an acceptable time frame." Tr. at 170-71. The second examiner confirmed the presence of mental retardation and reported that Davis can "make himself understood fairly effectively, considering his intellectual level" and can complete tasks in an acceptable timeframe. Tr. at 182-83. The second

7

examiner concluded, "It is questionable in this examiner's mind whether or not this man could successfully hold down an unskilled job considering his ability to comprehend and overall intellectual functioning." Tr. at 183. The examiners' findings did not conflict because: (1) the first examiner alerted the ALJ to possibility of mental retardation and the second examiner confirmed the presence of mental retardation; (2) the first examiner identified communication difficulties and the second examiner confirmed the ability to communicate despite communication difficulties; and (3) the first examiner identified possible problems with persistence and pace and the second examiner confirmed the ability to persist and complete tasks adequately within normal limits.

A Ph.D. psychologist and an M.D. reviewed the examiners' reports and opined that Davis could do unskilled work where interpersonal contact is incidental to work performed; where complexity of tasks is learned and performed by rote, with few variables and little judgment required; and where supervision required is simple, direct, and concrete. Tr. at 202, 206, 212. This opinion presented no conflict because the second examiner reported mild deficiency in the ability to cope with the typical mental and cognitive demands of basic work tasks and the ability to attend to and sustain concentration on basic tasks. Tr. at 183. That finding was consistent with the consultant's opinion that Davis was not significantly limited in the ability to carry out very short and simple instructions or to make simple work-related decisions. Tr. at 202.

The consultant's opinion formed the basis of the ALJ's determination about Davis's ability to work. Based on Davis's testimony, Tr. at 32-35, the ALJ further reduced Davis's ability to work because he has difficulty dealing with the general public and minor changes in the usual work routine. Substantial evidence supported the resulting determination because a reasonable mind would find the evidence adequate to support the determination that Davis could do work involving simple work

instructions at all exertional levels. Davis asserts that the ALJ failed to weigh the medical evidence, Document #11, at 3, but the ALJ recognized that the medical opinions flowed from examining and non-examining sources specializing in psychology and acknowledged the weight given to such opinions. Tr. at 17. In the absence of medical evidence from a treating source or conflicting medical opinions, no more was required. Although Davis complains about the ALJ's failure to discuss all medical findings, "an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

Davis contends that the ALJ's hypothetical question was defective. He complains about the omission of the details of the mental residual functional capacity assessment and the omission of ankle pain and back pain. Document #9, at 2-4.

> A hypothetical question . . . is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true. The hypothetical question must capture the concrete consequences of the claimant's deficiencies. However, the ALJ may exclude any alleged impairments . . . properly rejected as untrue or unsubstantiated.

*Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) (internal quotation marks and citations omitted).

The hypothetical question omitted details of the residual functional capacity assessment, but the ALJ is not required "to mechanically list and reject every possible limitation." *McCoy*, 648 F.3d at 615. Instead, the ALJ must capture the concrete consequences of the claimant's deficiencies. The hypothetical question in this case captured the concrete consequences of Davis's deficiencies because it included Davis's (1) educational background; (2) limited reading and writing capabilities; (3) marginal ability to communicate; (4) inability to deal with minor changes in usual work routine; (5) inability to deal with general public; (6) ability to understand, remember and carry out simple one or

two-step jobs; and (7) ability to make judgments in simple work-related situations, such as obvious job hazards. Tr. at 36. The ALJ properly omitted exertional limitation because the record did not show occasional ankle or back pain diminished Davis's ability to work. The question was properly phrased.

The vocational expert responded to the question and identified available work. Tr. at 36-37 (identifying landscape laborer in the heavy category, hospital cleaner in the medium category, and production assembler in the light category). Because a vocational expert's testimony answering a properly phrased hypothetical question constitutes substantial evidence, the ALJ's determination that Davis could work was supported by substantial evidence. *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011); *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010).

## CONCLUSION

Having determined substantial evidence supports the Commissioner's denial of Davis's application, and the Commissioner made no legal error, the Court DENIES Davis's request for relief and AFFIRMS the Commissioner's decision.

IT IS SO ORDERED this 24th day of June, 2013.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE